1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARLENE JOHNSON,<br><br>            Plaintiff,<br><br>    v.<br><br>JO ANNE B. BARNHART,<br>Commissioner of Social<br>Security,<br><br>            Defendant. | )  1:05-CV-00171-OWW-SMS<br>)<br>)  FINDINGS AND RECOMMENDATION THAT<br>)  PLAINTIFF'S SOCIAL SECURITY<br>)  COMPLAINT BE GRANTED (DOC. 1)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

        Plaintiff is proceeding with counsel and is seeking judicial review of a final decision of the Commissioner of Social Security (Commissioner) denying an application for benefits. The matter has been referred to the Magistrate Judge pursuant to 28 U.S.C.§ 636(b) and Local Rule 72-302(c)(15). The matter is currently before the Court on the parties' briefs, which have been submitted without oral argument.

### HISTORY

        A prior application for Supplemental Security Income payments (SSI) and Disability Insurance Benefits (DIB), filed on August 5, 1999, was determined adversely to Plaintiff by an unfavorable, post-hearing decision dated December 28, 2000, (Tr.

1

1  53-58), which the Appeals Council subsequently determined did not
2  merit review on February 1, 2002 (Tr. 19, 61-62).

3      Plaintiff then on April 1, 2002, filed the application for
4  SSI and DIB that is the subject of review in the present
5  proceeding, alleging disability commencing on June 11, 1999, due
6  to left carpal tunnel (CTS) resulting from favoring the carpal
7  tunnel on the right, injury to the thoracic area in 1985, left
8  pelvic bone that turned inward and pulled the low back and right
9  hip, making the right leg shorter and causing low back pain and
10 sciatica, all of which became more painful the longer that
11 Plaintiff stayed on her feet; further, work and upright positions
12 stressed her back and body, causing spasms of the injured areas.
13 (Tr. 85-109, 271-74.)

14     After Plaintiff's claim was denied initially and on
15 reconsideration, Plaintiff requested, and appeared at, a hearing
16 before the Honorable James N. Baker, Administrative Law Judge
17 (ALJ) of the Social Security Administration (SSA), on August 26,
18 2003. Plaintiff appeared with an attorney and testified; a
19 Spanish interpreter also was present. (Tr. 19-26.) On January 30,
20 2004, the ALJ denied Plaintiff's application for benefits. (Id.
21 at 19-26.) Plaintiff appealed the ALJ's decision to the Appeals
22 Council. After the Appeals Council denied Plaintiff's request for
23 review on December 4, 2004, (Tr. 6-9), Plaintiff filed the
24 complaint in this action on February 4, 2005. Briefing commenced
25 on October 4, 2005, and was completed with the filing on October
26 24, 2005, of Defendant's brief.

27                   STANDARD AND SCOPE OF REVIEW
28     Congress has provided a limited scope of judicial review of

1  the Commissioner's decision to deny benefits under the Act. In

2  reviewing findings of fact with respect to such determinations,

3  the Court must determine whether the decision of the Commissioner

4  is supported by substantial evidence. 42 U.S.C. § 405(g).

5  Substantial evidence means "more than a mere scintilla,"

6  <u>Richardson v. Perales</u>, 402 U.S. 389, 402 (1971), but less than a

7  preponderance, <u>Sorenson v. Weinberger</u>, 514 F.2d 1112, 1119, n. 10

8  (9th Cir. 1975). It is "such relevant evidence as a reasonable

9  mind might accept as adequate to support a conclusion."

10 <u>Richardson</u>, 402 U.S. at 401. The Court must consider the record

11 as a whole, weighing both the evidence that supports and the

12 evidence that detracts from the Commissioner's conclusion; it may

13 not simply isolate a portion of evidence that supports the

14 decision. <u>Jones v. Heckler</u>, 760 F.2d 993, 995 (9th Cir. 1985).

15 It is immaterial that the evidence would support a finding

16 contrary to that reached by the Commissioner; the determination

17 of the Commissioner as to a factual matter will stand if

18 supported by substantial evidence because it is the

19 Commissioner's job, and not the Court's, to resolve conflicts in

20 the evidence. <u>Sorenson v. Weinberger</u>, 514 F.2d 1112, 1119 (9th

21 Cir. 1975).

22      In weighing the evidence and making findings, the

23 Commissioner must apply the proper legal standards. <u>Burkhart v.</u>

24 <u>Bowen</u>, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must

25 review the whole record and uphold the Commissioner's

26 determination that the claimant is not disabled if the

27 Commissioner applied the proper legal standards, and if the

28 Commissioner's findings are supported by substantial evidence.

3

1  See, Sanchez v. Secretary of Health and Human Services, 812 F.2d

2  509, 510 (9th Cir. 1987); Jones v. Heckler, 760 F.2d at 995. If

3  the Court concludes that the ALJ did not use the proper legal

4  standard, the matter will be remanded to permit application of

5  the appropriate standard. Cooper v. Bowen, 885 F.2d 557, 561 (9th

6  Cir. 1987).

7  <u>ANALYSIS</u>

8       In order to qualify for benefits, a claimant must establish

9  that she is unable to engage in substantial gainful activity due

10  to a medically determinable physical or mental impairment which

11  has lasted or can be expected to last for a continuous period of

12  not less than twelve months. 42 U.S.C. §§ 416(i), 1382c(a)(3)(A).

13  A claimant must demonstrate a physical or mental impairment of

14  such severity that the claimant is not only unable to do the

15  claimant's previous work, but cannot, considering age, education,

16  and work experience, engage in any other kind of substantial

17  gainful work which exists in the national economy. 42 U.S.C.

18  1382c(a)(3)(B); Quang Van Han v. Bowen, 882 F.2d 1453, 1456 (9th

19  Cir. 1989). The burden of establishing a disability is initially

20  on the claimant, who must prove that the claimant is unable to

21  return to his or her former type of work; the burden then shifts

22  to the Commissioner to identify other jobs that the claimant is

23  capable of performing considering the claimant's residual

24  functional capacity, as well as her age, education and last

25  fifteen years of work experience. Terry v. Sullivan, 903 F.2d

26  1273, 1275 (9th Cir. 1990).

27       The regulations provide that the ALJ must make specific

28  sequential determinations in the process of evaluating a

4

disability: 1) whether the applicant engaged in substantial gainful activity since the alleged date of the onset of the impairment, 20 C.F.R. § 404.1520 (1997);[1] 2) whether solely on the basis of the medical evidence the claimed impairment is severe, that is, of a magnitude sufficient to limit significantly the individual's physical or mental ability to do basic work activities, 20 C.F.R. § 404.1520(c); 3) whether solely on the basis of medical evidence the impairment equals or exceeds in severity certain impairments described in Appendix I of the regulations, 20 C.F.R. § 404.1520(d); 4) whether the applicant has sufficient residual functional capacity, defined as what an individual can still do despite limitations, to perform the applicant's past work, 20 C.F.R. §§ 404.1520(e), 404.1545(a); and 5) whether on the basis of the applicant's age, education, work experience, and residual functional capacity, the applicant can perform any other gainful and substantial work within the economy, 20 C.F.R. § 404.1520(f).

With respect to SSI, the five-step evaluation process is essentially the same. <u>See</u> 20 C.F.R. § 416.920.

Here, the ALJ noted that the presumption of nondisability from the previous decision continued, and he concluded that Plaintiff had not demonstrated significantly changed circumstances from those attending the previous decision. Plaintiff had a combination of impairments considered severe which did not meet any listing, but Plaintiff retained the RFC to perform light work with no repetitive cervical movements, and she

---

[1] All references are to the 2004 version of the Code of Federal Regulations unless otherwise noted.

1  should not sit in a forward position without a back support, and
2  should not reach overhead or push or pull more than occasionally;
3  thus, Plaintiff was able to perform her past relevant work as a
4  childcare worker and was not disabled. (Tr. 25-26.)

5      I. Application of Chavez v. Bowen

6      The Court rejects Plaintiff's argument that the ALJ failed
7  to note or apply the applicable law of Chavez v. Bowen, 844 F.2d
8  691 (9th Cir. 1988). The pertinent principles have been
9  established:

10         This court has stated that an ALJ's finding that a
       claimant is not disabled "create[s] a presumption that
11       [the claimant] continued to be able to work after that
       date." Miller v. Heckler, 770 F.2d 845, 848 (9th
12       Cir.1985). The presumption does not apply, however, if
       there are "changed circumstances." Taylor v. Heckler,
13       765 F.2d 872, 875 (9th Cir.1985). An increase in the
       severity of the claimant's impairment would preclude
14       application of res judicata. Id. The claimant need not,
       however, demonstrate that his medical or psychiatric
15       condition has worsened to show changed circumstances. Other
       changes suffice. For example, a change in the claimant's age
16       category, as defined in the Medical-Vocational Guidelines,
       constitutes a changed circumstance that precludes the
17       application of res judicata. Chavez v. Bowen, 844 F.2d 691,
       693 (9th Cir.1988). In addition, the Commissioner may not
18       apply res judicata where the claimant raises a new issue,
       such as the existence of an impairment not considered in the
19       previous application. Gregory v. Bowen, 844 F.2d at 666. Nor
       is res judicata to be applied where the claimant was
20       unrepresented by counsel at the time of the prior claim. Id.
21  Lester v. Chater, 81 F.3d 821, 827-28 (9th Cir. 1995) (footnote
22  omitted).

23      Here, in the decision under review in this proceeding, the
24  ALJ expressly stated that he considered the previous decision to
25  be res judicata as to residual functional capacity (RFC),
26  severity of the impairment and its meeting or a listing or
27  durational requirement, the physical or mental demands of the
28  claimant's past relevant work, age, education, and work

experience, including the skill level of the Plaintiff's past
relevant work, when adjudicating a new period of disability;
further, the ALJ noted that absent new and material evidence or
changes in legal requirements, the question of making a
subordinate finding regarding credibility did not arise. (Tr. 19-
20.) The ALJ then proceeded to complete the five-step disability,
considering whether new and material evidence demonstrated a new
impairment (Tr. 21, 24), the meeting of listing (Tr. 21), or a
change in the RFC (Tr. 21-25), making express conclusions on each
of these issues. He also concluded that no new and material
evidence had been presented relative to any past relevant work
and that thus Plaintiff could perform her past relevant work as a
childcare worker as she performed it in the past. (Tr. 25.) He
considered new vocational testimony and concluded expressly that
Plaintiff was able to return to her past relevant work and thus
was not disabled. (Tr. 25.)

    II. <u>Age Category</u>

    Likewise, the Court rejects Plaintiff's contention that the
ALJ failed to report the changed circumstance of Plaintiff's age.
Plaintiff does not cite to the record in support of this
argument. The Court notes that in a colloquy with the VE and
Plaintiff's attorney, the present ALJ characterized Plaintiff's
age of almost 58 (apparently her age during the previous
proceeding) as advanced age. (Tr. 45.) Plaintiff testified that
she was born on July 26, 1941, (Tr. 29), which means that at the
time of the previous decision on December 28, 2000, Plaintiff was
fifty-nine years old, whereas at the time of the decision under
review here, namely, January 29 or 30, 2004, Plaintiff was sixty-

1  two. As Defendant notes, both of these ages are within the

2  category of "advanced age," of fifty-five and over, as defined by

3  20 C.F.R. § 404, Appendix 2, subpart P, §§ 200(f), 202.

4      II. <u>Step Two</u>

5      Plaintiff argues that the ALJ erred in finding that

6  Plaintiff had not sustained her burden of showing a worsening

7  impairment or impairments because she demonstrated fibromyalgia

8  and CTS, impairments which were not found to have been severe in

9  the previous decision, in which only Plaintiff's cervical disc

10 disease was found to be severe.

11     In the previous decision, the ALJ found that Plaintiff's

12 degenerative disc disease was severe. (Tr. 54.) However, the

13 previous ALJ concluded that Plaintiff had overestimated the

14 impact of her impairments on her ability to work, (Tr. 55).

15     The ALJ who authored the present decision expressly

16 concluded that Plaintiff's degenerative disc disease was not

17 severe enough to meet or medically equal a listing, and that

18 Plaintiff had not provided new and material evidence that showed

19 that Plaintiff had a new impairment. (Tr. 21.)

20     He reviewed the medical evidence regarding Plaintiff's

21 cervical spine that reflected only degenerative changes with

22 narrowing of the left C5-6 intervertebral foramina in January

23 2000, and small spurs of the lower vertebral segment and slight

24 narrowing of the left-sided C4-5 and C5-6 intervertebral foramina

25 with no spinal stenosis in March 2000. (Tr. 22, 184, 181.)

26     With respect to CTS, the previous ALJ had noted Plaintiff's

27 subjective claim of having been disabled by CTS of her right

28 hand, (Tr. 55); reviewed a diagnosis of right CTS in 1986 and

noted her CTS release surgery in 1987; and then observed that her
medical records revealed few, if any, significant continued
symptoms, (Tr. 56). He concluded that Plaintiff could perform a
full range of light work with avoidance of repetitive cervical
movements and sitting in a forward position without a back
support, and only occasional reaching overhead or pushing or
pulling. (Tr. 57.)

     The ALJ who authored the decision being reviewed here
concluded, as did the previous ALJ, that Plaintiff
was not totally credible, or credible with respect to the impact
of her impairments upon her ability to work. (Tr. 22, 25.) He
cited the credibility factors relied upon by the previous ALJ and
the lack of new and material evidence to upset this finding. (Tr.
22.) The second ALJ expressly noted that Plaintiff's present
testimony was consistent with her previous testimony. He then
noted a treating physician's indication in February 2001 that
Plaintiff's subjective complaints of pain might be related to her
application for disability benefits and thus indicate a concern
for secondary gain (Tr. 158, reflecting Plaintiff's report in a
cardiology follow-up that although she was feeling good and was
not having much in the way of pain, she wanted to be certain that
the treaters recorded that she was having a lot of arm and neck
pain because that "might be important to Social Security,"); an
absence of any anxiety or depression in September 2001 during a
visit to the orthopedic clinic in September 2001 (Tr. 147);
Plaintiff's questionable medical compliance when she stopped
taking her medications in April 2002 (Tr. 143, reflecting that
Plaintiff stopped the Voltaren and did not start Imipramine

9

because she did not want to take any medications as long as she did not have to do so); a lack of treatment in 2002-2003; and Plaintiff's report to urgent care in April 2000 that she had come primarily for documentation of her falling for the last two days for Social Security purposes, which again indicated secondary gain concerns (Tr. 179, 22). The ALJ concluded that these factors only compounded the credibility problem. (Tr. 22.)

The ALJ noted Plaintiff's treatment from January 2000 through June 2003 at Stanislaus County Health Services Agency (HSA) for a variety of complaints including pain in the neck, upper extremity, lower back, pelvis, chest, shoulder, hip, thoracic spine, head, lower quadrant of the abdomen, and mouth; and for conditions including cervicobrachial syndrome--left, carpal tunnel syndrome--bilateral, short right leg--3/4 inch congenital, mild hyperpronation of the forefeet, fibromyalgia rheumatica, headaches, menopause, a fall, elevated blood pressure, and dizziness. (Tr. 23, Tr. 137-84, 235-51, 262-70.) He reviewed the treatment, which included medications (Elavil, Imipramine), x-rays, CT scans, pelvic ultrasounds, cardiology referrals (treadmill test and Thallium study), pain management consultations, orthopedic clinic evaluations, aerobic exercises, and information regarding cervical pillows and electrical muscle stimulation devices. (Tr. 23.)

In the previous decision, Plaintiff's CTS right was considered, as were her left neck and shoulder impairment and right hip pain. (Tr. 55.) Plaintiff reported then that she tried not to stand for longer than fifteen to twenty minutes or bend over a desk for longer than thirty minutes; she cooked, cleaned,

1   shopped, ran errands, and played card games, adjusting her method

2   of participating in such activities so as to avoid neck strain.

3   (Tr. 55-56.)

4        Plaintiff points to evidence that Plaintiff claims reflects

5   that her CTS and fibromyalgia are documented. This evidence

6   includes clinic notes from HSA that reflect her subjective

7   complaints and examinations resulting in assessments that she had

8   those conditions, including clinic notes from April 2002

9   indicating treatment consisting of no prescriptions, but aerobic

10  exercise, cervical pillow, and handouts regarding electrical

11  muscle stimulation devices and glucosamine sulfate (Tr. 143-44);

12  a clinic note from September 2001 reflecting complaints of pain,

13  stiffness, fatigue, and limited activities, with objective signs

14  of some limited range of motion of the head and neck, and normal

15  grip, abduction, strength to elbow flexion and extension,

16  shoulder abduction, adduction, and internal and external

17  rotators; normal sensation of the dermatomes of the upper

18  extremities, and normal deep tendon reflects of the biceps,

19  triceps, and brachioradialis; the treatment was a heel lift for

20  the right foot, glycosamine sulfate, aerobic exercises to pulse

21  of 130 beats per minute, and seminars and follow-up (Tr. 147); a

22  clinic note from July 2001 revealing mild hyperpronation of the

23  forefeet, normal gait, and need for a 3/4 inch lift under the

24  right foot to level the pelvis (Tr. 151); findings including

25  tenderness in August 2001 and April 2002 (Tr. 148, 144, 142),

26  seventy-five degrees of straight leg raising, right and left,

27  with no pain on the right and pain just posterior to the greater

28  trochanter on the left in July 2001 (Tr. 151); some restricted

range of motion of the head and neck in September 2001 (Tr. 146);
and continued lower back pain and limited movement with stable
gait in July 2002, treated with exercise and capsaicin cream (Tr.
138).

Although Plaintiff asserts that this would establish a
worsening of her impairments, the question is whether the ALJ's
determination that Plaintiff's functioning limitations were not
further restricted was supported by substantial evidence.
Consultative examiner Dr. Dhaliwal in October 2002 concluded that
although there was spinal tenderness, there was no Tinel's or
Phalen's sign or any other evidence of carpal tunnel syndrome;
motor strength was 5/5 in upper and lower extremities, including
grip strength; he diagnosed possible flexor or extensor
tendonitis of the forearm; he mentioned possible carpal tunnel
syndrome, although he felt that it was related to her tendonitis.
(Tr. 188.) Plaintiff's fibromyalgia was not shown to have been
comprehensively diagnosed or treated; it simply appears as a
diagnosis in August 2001 after an exam in which spinal tenderness
was observed but without reference to specific clinical findings.
(See Tr. 149.) Plaintiff's evidence did not require a finding
that her CTS and fibromyalgia were separately or in combination
severe because Plaintiff did not establish that she suffered
functional limitations from these ailments, which were treated
intermittently but conservatively with medication, exercise,
diet, cervical pillow, and a heel lift. (Tr. 143, 144, 147, 149,
151, 237.)

The ALJ reviewed the evidence concerning Plaintiff's lumbar
spine, left shoulder, right hip, and pelvic condition or

1  condition concerning Plaintiff's pain from having one leg shorter
2  than the other. (Tr. 22.) The ALJ considered the x-ray of
3  Plaintiff's lumbar spine taken in April 2000, which showed
4  minimal degenerative changes, maintenance of the vertebral and
5  disc height, small spurs of the cortices, sclerotic change of the
6  sacroiliac joints, but no spinal stenosis or osteopenia (Tr.
7  177); the x-ray taken in March 2001 of Plaintiff's left shoulder,
8  which was normal (as was Plaintiff's right hip, also studied on
9  the same day) (Tr. 155); and the August 2001 pelvic x-ray taken
10 in connection with Plaintiff's shorter leg pain, which was
11 normal, revealing normal sacroiliac and hip joints and no
12 fracture or spurring (Tr. 245).

13     The Court concludes that the record contains substantial
14 evidence supporting the ALJ's conclusion that Plaintiff had not
15 established additional severe impairments or worsening of
16 impairments.

17     III. <u>Expert Opinions of Plaintiff's Capacity</u>

18     Plaintiff complains of the ALJ's treatment of the expert
19 opinions.

20     Plaintiff notes that her treating "doctor" opined that her
21 osteoarthritis had worsened to the point that Plaintiff could not
22 work an eight-hour day because of her pain, pointing to the
23 opinion of Dan Cox, PA-C of July 2003 based on x-rays showing the
24 condition in the cervical and lumbar spine treated by oral
25 medications and physical therapy with poor response and guarded
26 prognosis resulting in a capacity to lift and carry up to ten
27 pounds frequently, up to twenty pounds occasionally, sit two to
28 three hours per day, stand and/or walk one hour, lie elevated two

to three hours, occasionally climb, stoop, crouch, kneel, and crawl, and do so without any limitations of the hands, hearing, or speaking. (Tr. 230-34.)

An ALJ may disregard a treating physician's opinion that is controverted by other opinions only by setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record. <u>Rodriguez v. Bowen</u>, 876 F.2d 759, 762 (9th Cir. 1989). This burden is met by stating a detailed and thorough summary of the facts and conflicting clinical evidence, stating the interpretation of the evidence, and making findings. <u>Cotton v. Bowen</u>, 799 F.2d 1403, 1408 (9th Cir 1986). However, if the medical opinion of a claimant's treating physician is uncontroverted, then an ALJ must present clear and convincing specific reasons, supported by substantial evidence in the record, for rejecting the uncontroverted medical opinion of a claimant's treating physician. <u>Holohan v. Massanari</u>, 246 F.3d 1195, 1203 (9th Cir. 2001). A failure to set forth a reasoned rationale for disregarding a particular treating physician's findings is legal error. <u>Cotton v. Bowen</u>, 799 F.2d at 1408.

The medical opinion of a nontreating doctor may be relied upon instead of that of a treating physician only if the ALJ provides specific and legitimate reasons supported by substantial evidence in the record. <u>Holohan v. Massanari</u>, 246 F.3d 1195, 1202 (9th Cir. 2001) (citing <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1995)). The contradictory opinion of a nontreating but examining physician constitutes substantial evidence, and may be relied upon instead of that of a treating physician, where it is based on independent clinical findings that differ from those of

14

the treating physician. <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1041 (9th Cir. 1995). The opinion of a nontreating, nonexamining physician can amount to substantial evidence as long as it is supported by other evidence in the record, such as the opinions of other examining and consulting physicians, which are in turn based on independent clinical findings. <u>Andrews v. Shalala</u>, 53 F.3d at 1041.

Here, the ALJ gave little weight to the opinion of Dan M. Cox, PA-C[2] of the Stanislaus County Family Practice Clinic, because 1) it was inconsistent with Plaintiff's daily activities of caring for a disabled child, cooking, and doing laundry)[3]; 2) it was an opinion on disability which was a subject reserved to the Commissioner for decision; and 3) Dr. Castro was a kind and caring physician who believed his patient, but the ALJ was "not so sanguine." (Tr. 23.)

The ALJ correctly noted that he was not bound by the opinion of the care provider regarding disability. A determination of whether or not a claimant meets the statutory definition of disability is a legal conclusion reserved to the Commissioner; the opinion of a medical source on the ultimate issue of disability is not conclusive. <u>Magallanes v. Bowen</u>, 881 F.2d 747, 751 (9th Cir. 1989). Further, where a treating source's opinion is based largely on the Plaintiff's own subjective description of her symptoms, and the ALJ has discredited the Plaintiff's claim

---

[2] The name of the physician on the report was John Castro, a treating physician of Plaintiff, but the opinion as signed by Dan Cox PAC. (Tr. 230, 234.) The ALJ referred to it as the report of Dr. Castro. (Tr. 23.)

[3] Dr. Castro stated at the end of his evaluation, "Mr. Milam, Mrs. Johnson is a 62 y/o [female] with a chronic condition of osteoarthritis that takes care of an elderly mother and a mentally retarded son. She should be granted disability." (Tr. 234.)

1  as to those subjective symptoms, the ALJ may reject the treating

2  source's opinion. <u>Fair v. Bowen</u>, 885 F.2d 597, 605 (9th Cir.

3  1989). As will be discussed hereinbelow, the ALJ rejected

4  Plaintiff's credibility on the basis of substantial evidence.

5  Further, it is permissible to rely on the Plaintiff's testimony

6  regarding her impairments in discrediting a treating physician's

7  opinion. <u>Fisher v. Schweiker</u>, 568 F.Supp. 900, 903 (N.D.Cal.

8  1983). Plaintiff testified that she mopped the floor in the

9  bathroom, cooked meals for herself and her son, did dishes, and

10 did laundry. (Tr. 35-37.) The Court concludes that the rejection

11 of the opinion was supported by specific and legitimate reasons,

12 was made according to correct legal standards, and was supported

13 by substantial evidence.

14     Plaintiff attacks the ALJ's acceptance of the opinion of the

15 consulting examiner but does not identify the "CE" of whom she

16 complains. (Brief at pp. 6-7.) The Court understands Plaintiff's

17 argument to concern Dr. Dhaliwal. The ALJ adverted to the

18 orthopedic consultative exam of October 2002 completed by Dr.

19 Navdeep Dhaliwal, who diagnosed possible degenerative disc

20 disease or facet arthropathy, possible degenerative arthritis of

21 the knee, possible tendonitis of the forearm, and possible CTS.

22 Dr. Dhaliwal found no evidence of radiculopathy or myopathy but

23 found decreased range of motion in the cervical and lumbar spine;

24 he opined that Plaintiff could stand and walk at least six hours

25 with frequent breaks, sit without restriction, lift fifteen

26 pounds frequently and twenty-five pounds occasionally, with

27 postural limitations of only occasional bending, stooping, and

28 crouching. (Tr. 23-24, 185-89.) The ALJ gave some weight to the

1  assessment because the report was comprehensive, and his

2  assessments were well explained, supported by objective findings,

3  and based on an actual examination of Plaintiff. (Tr. 24.)

4  Substantial evidence supports this assessment.

5       Plaintiff complains that the CE, again understood to be Dr.

6  Dhaliwal, missed finding any specific diagnosis, failed to review

7  any medical records, and concluded that there was CTS without

8  imposing hand limits; thus, the ALJ was required to develop the

9  opinion or put no weight on it.

10      The Court notes that the lack of a specific diagnosis

11 occurred in the context of the absence of clinical findings that

12 would have warranted an affirmative diagnosis, and thus it was

13 logical that no further diagnosis was made. The record was not

14 inadequate for the purpose of rendering a decision. The duty to

15 develop the record arises where the record before the ALJ is

16 ambiguous or inadequate to allow for proper evaluation of the

17 evidence. 20 C.F.R. §§ 404.1512(e) and 416.912(e); <u>Mayes v.</u>

18 <u>Massanari</u>, 262 F.3d 963, 968 (9th Cir. 2001). It was the burden of

19 the Plaintiff to establish that she was unable to perform her

20 past relevant work. Although the completeness of an examination

21 is a factor in weighing an opinion based on the exam, 20 C.F.R. §

22 416.927(d)(6), the Court is unaware of any principle of law that

23 provides that regardless of the nature and extent of a medical

24 examination, an opinion resulting from such an examination is

25 entitled to no weight if the examiner does not review medical

26 records.

27      Here, in any event, the consulting examiner reviewed

28 orthopedic clinic reports from Dr. Ambree and obtained specific

1  histories from Plaintiff of her various complaints and treatments
2  therefor. (Tr. 185-86.)

3      Finally, because the physician found no evidence of CTS and
4  felt that Plaintiff's left forearm pain was related to
5  tendonitis, and further opined that it was only possible that she
6  had CTS, the fact that the doctor did not posit restrictions
7  based on CTS does not detract from the opinion.

8      Plaintiff states that the ALJ gave great weight to the
9  opinions of the state medical consultants (DDS opinions) that
10 were in turn based in part on the opinion of Dr. Dhaliwal, whom
11 Plaintiff characterizes as "this errant CE." (Brief p. 6, Tr.
12 24.)

13     The Court has previously considered the weight given to Dr.
14 Dhaliwal's opinion. The ALJ expressly gave substantial weight to
15 the assessments of the state agency consultants because they were
16 familiar with the Social Security Disability program and its
17 evidentiary requirements, and their reports were consistent with
18 the previous ALJ's finding. (Tr. 24.) The Court interprets this
19 statement of reasons as referring to the professional background
20 and qualifications of the physicians involved as well as their
21 assessment of evidence, all of which are appropriate factors.
22 Greater weight will be given to opinions based on or supported by
23 relevant evidence, such as medical signs and laboratory findings.
24 20 C.F.R. § 404.1527(d)(3); 20 C.F.R. § 416.927(d)(3). Likewise,
25 the better an explanation a source provides for an opinion, the
26 more weight will be given to the opinion. Id. The more consistent
27 an opinion is with the record as a whole, the more weight will be
28 given to the opinion. 20 C.F.R. § 404.1527(d)(4); 20 C.F.R. §

18

416.927(d)(4). More weight is generally given to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist. 20 C.F.R. § 404.1527(d)(5); 20 C.F.R. § 416.927(d)(5). The agency will consider other factors that tend to support or contradict the opinion, such as the extent the source understands the disability programs and their evidentiary requirements, and the extent to which an acceptable medical source is familiar with the other information in the case record. 20 C.F.R. § 404.1527(d)(6); 20 C.F.R. § 416.927(d)(6). Although the opinions were rendered in April and November 2002 (Tr. 129-36, opinion of Dr. Antoine Dipsia, Tr. 190-97, opinion of medical doctor whose name is illegible), Plaintiff does not point to evidence that undercuts them or renders reliance upon them inappropriate.

Here, the ALJ gave specific and legitimate reasons for adopting the opinions, and Plaintiff has not mounted an argument that such opinions were not supported by substantial evidence.

Plaintiff notes that the state agency consultants' opinions gave limits which the ALJ did not set out in his RFC or develop where unclear, such as inconsistent limits on reaching. (Brief pp. 6-7.) Plaintiff cites to Tr. 132, where Dr. Dipsia indicated that reaching in all directions, including overhead, was limited, and stated, "[Occasional] overhead reaching due to CTS/back [pain]." The other state agency consultant likewise indicated that there were limitations in the category of reaching all directions (including overhead), and stated, "[N]o freq. OH reaching," (Tr. 193), which the Court interprets as no frequent

1  overhead reaching, or only occasional overhead reaching. These

2  two limitations are not necessarily inconsistent with each other.

3  The ALJ adopted an RFC with no more than occasional overhead

4  reaching. (Tr. 25, 26.) The Court fails to see any inconsistency.

5      IV. <u>Plaintiff's Subjective Complaints</u>

6      Plaintiff complains that the ALJ did not make a credibility

7  finding and that the improperly ALJ failed to consider evidence

8  of subjective complaints.

9      In connection with his determination of Plaintiff's RFC, the

10  ALJ stated that he would consider all of Plaintiff's symptoms,

11  including her pain. (Tr. 21.) He recited Plaintiff's testimony at

12  the hearing concerning her activities of daily living, stress,

13  fatigue, pain, and limitations of standing for twenty minutes,

14  sitting for two hours without leaning forward because of

15  headaches, and lifting five pounds. The ALJ also noted her

16  testimony that she could not vacuum or mop, but was able to

17  perform limited cooking, dishwashing, and laundry activities, and

18  that her son was disabled by cerebral palsy. He also noted that

19  staying on her feet increased her pain and that work and upright

20  positions stressed her back and body, causing spasms of the

21  injured areas. (Tr. 22.)

22      The ALJ noted that Plaintiff's testimony at the prior

23  hearing was consistent with her testimony at the present hearing.

24  The ALJ indicated that absent new and material evidence or

25  changes in legal requirements, the question of making a

26  "subordinate" finding regarding credibility did not arise, and he

27  cited agency sources to this effect. (Tr. 22.) He noted the prior

28  ALJ's finding that Plaintiff was not wholly credible regarding

the impact of her impairments on her ability to work, and he
stated that there was nothing in the record to warrant reviewing
that finding.[4] However, he also stated that it defied logic not to
factor in this prior finding when deciding the issue. (Tr. 22.)
The ALJ then reviewed evidence concerning Plaintiff's
credibility, which included evidence that came into being both
before and after the first hearing decision of December 28, 2000.
(Tr. 22.) He noted her medications, secondary gain concerns, a
lack of anxiety or depression in September 2001, Plaintiff's
stopping her medications in April 2002, lack of treatment in
2002-2003, and Plaintiff's statement in April 2000 that her visit
to urgent care was primarily to document her falls for two days
for Social Security purposes. (Tr. 22, 179.)

In considering Dr. Castro's opinion of Plaintiff's abilities
on June 18, 2003, the ALJ stated that he was not as sanguine as
Dr. Castro, who believed his patient. (Tr. 23.) This was clearly
a negative credibility finding. If any doubt were to remain, it
would be resolved by the ALJ's express finding that Plaintiff's
allegations regarding her limitations were not totally credible
for the reasons set forth in the body of the decision. (Tr. 25.)

Plaintiff argues that the ALJ failed to consider 1) a letter
that Plaintiff wrote to the SSA on March 29, 2002, in which she
complained of her attorney's handling of the case; worsening of
her back problem, stumbling and falling if she got up without
first stretching and exercising, constant body pain, need for

---

[4] The prior finding was based on Plaintiff's activities of daily living, conservative treatment, few continued symptoms of CTS, and conflicts between information contained in the documentary reports and reports of the treating and examining practitioners. (Tr. 55-56.)

frequent rest during the day, rotation of her left hip inward towards the front which affected her walking and made it painful to stand for very long, and her desire to work; she noted that her son could adjust her neck or back to relieve the pain (Tr. 117); 2) a statement dated May 22, 2002, in which Plaintiff stated that to help her back, she slept in a half-sitting position to prevent pain from hip dislocation, adjusted her neck and thoracic area every hour or two during the day, sat carefully supported while driving, avoided much time on her feet, as in big stores, napped daily, adjusted back and hips before getting up in the morning, extra rest before and after traveling out of town, wearing the same clothes to avoid the exhaustion of changing clothes, and spending as little time as possible in food preparation (Tr. 119); 3) and a pain questionnaire filled out by Plaintiff on October 2, 2002, in which Plaintiff described a history of right CTS since 1974, neck, shoulder, and left thoracic pain in 1986, and hips and low back since 1995; she suffered a constant pressure on her spine and joints and neck, and her neck and hips hurt all the time; the pain spread from her neck to her legs and the lower front of her body, as well as the arms and shoulders, and "one part or another [hurt] at all times"; pain was brought on by putting preschoolers on her lap, gripping tools and lifting pans, and standing longer than twenty to thirty minutes or walking more than a block; rest and napping two or three times daily from thirty minutes to two hours helped; her medications, including Elavil several times a month to sleep, Voltaren twice a day (which helped her ovary area), Advil, and Tylenol, but caused drowsiness; she used various belts and

halters to relieve pain; she did chores in intervals and rested,
getting help with vacuuming and things involving bending over or
heavy lifting, and avoiding stressful activities, which
intensified the pain; she could do errands without assistance if
she did not have to walk far or carry much, she drove, could walk
one block outside, stand thirty minutes at a time, and sit an
hour and one-half or less; she could drive and use public
transportation and could do light housekeeping such as dusting
and cooking without assistance. (Tr. 124-26.)

Although the ALJ might not have mentioned each one of these
individual sources, the basic information contained in them is
consistent with the evidence considered by the ALJ in the prior
proceeding (disabling CTS right, left neck and shoulder
impairment, right hip pain, tendency to stumble if she did not
rest, inability to stand more than fifteen minutes or to bend
more than thirty minutes, need to adjust her mode of cleaning
when caring for her elderly mother and adult disabled son) (Tr.
55) and the present proceeding (see preceding summary). It is
established that an ALJ need not advert expressly to every item
of evidence in order to show that it is considered; rather, the
ALJ must discuss evidence that is significant or probative and
must explain why it was rejected. Howard ex rel. Wolff v.
Barnhart, 341 F.3d 1006, 1011-12 (9th Cir. 2003).

The existence and severity of a person's reaction to a
physical ailment, such as the existence and severity of pain, are
subjective phenomena, the extent of which cannot be objectively
measured. Byrnes v. Shalala, 60 F.3d 639, 642 (9th Cir. 1995). In
order to reject a claimant's subjective complaints, the ALJ must

1  provide specific, cogent reasons for the disbelief. <u>Lester v.</u>
2  <u>Chater</u>, 81 F.3d 821, 834 (9th Cir. 1995). Once the claimant
3  introduces medical evidence of an underlying impairment that
4  could reasonably be expected to produce some degree of the
5  subjective symptoms, the Commissioner may not discredit the
6  claimant's testimony as to subjective symptoms merely because
7  they are unsupported by objective evidence such as objective
8  medical findings. <u>Id.</u>; <u>Smolen v. Chater</u>, 80 F.3d 1273, 1282 (9th
9  Cir. 1996). Unless there is affirmative evidence tending to show
10 that the claimant is malingering, the reasons for rejecting the
11 claimant's testimony must be clear and convincing, and the ALJ
12 must set forth the rejection by identifying what testimony is not
13 credible and what evidence undermines the claimant's complaints.
14 <u>Lester v. Chater</u>, 81 F.3d at 834. The findings of the adjudicator
15 must be properly supported by the record and must be sufficiently
16 specific to allow a reviewing court to conclude that the
17 adjudicator rejected the claimant's testimony on permissible
18 grounds and did not arbitrarily discredit a claimant's testimony.
19 <u>Bunnell v. Sullivan</u>, 947 F.2d 341, 345-46; <u>Byrnes v. Shalala</u>, 60
20 F.3d at 641-42 (9th Cir. 1995); <u>see</u> 20 C.F.R. § 404.1529(c)
21 [disability] and 20 C.F.R. § 416.929(c) [supplemental security
22 income].

23     Social Security Ruling 96-7p directs the adjudicator to
24 consider not only objective medical evidence of signs, laboratory
25 findings, and medical opinions, but also the following factors
26 when assessing the credibility of an individual's statements:

27        1. The individual's daily activities;
         2. The location, duration, frequency, and intensity
28           of the individual's pain or other symptoms;

24

3. Factors that precipitate and aggravate the symptoms;
4. The type, dosage, effectiveness, and adverse side effects of any medication for pain or other symptoms;
5. Treatment, other than medication, for relief of pain or other symptoms;
6. Any measures other than treatment used by the individual to relieve the pain or other symptoms; and
7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

See also Bunnell v. Sullivan, 947 F.2d at 346.

Here, the ALJ adverted to the limitations claimed by Plaintiff in her testimony, which fairly reflected the non-testimonial sources now urged by Plaintiff. (Tr. 32-39.)

Plaintiff contends that the ALJ failed to consider Plaintiff's unsuccessful work attempt and cites to Tr. 3, which is a list of exhibits. (Brief p. 8.) Plaintiff's argument is not supported by a citation to the record that explains the evidentiary basis of Plaintiff's argument. To the extent that Plaintiff is attempting to state an argument, the argument is so undeveloped that it is incapable of assessment. The Court is thus unable to consider Plaintiff's argument and will not do so.

The Court concludes that the ALJ expressly stated clear and convincing reasons for rejecting Plaintiff's credibility, which were based on substantial supporting evidence in the record, including secondary gain concerns, failure to comply with treatment, (Tr. 22), and absent or minimal objective findings (Tr. 22-23). He also adopted by implication the reasons stated by the prior ALJ, which included activities of daily living, conservative treatment, few continued symptoms of CTS, and conflicts between information contained in the documentary reports and reports of the treating and examining practitioners.

1  Johnson v. Shalala 60 F.3d 1428, 1433-34 (9th Cir. 1995); Smolen

2  v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); Bunnell v.

3  Sullivan, 947 F.2d at 346 (9th Cir. 1991); Thomas v. Barnhart,

4  278 F.3d 947, 958-59 (9th Cir. 2002).

5       V. Ability to Perform Past Relevant Work

6       Plaintiff argues that the testimony of the VE was to the

7  effect that Plaintiff could not perform her past relevant work

8  (PRW) and that the assessment of PRW by the ALJ in the prior

9  decision was incorrect because Plaintiff was not a nursery school

10 attendant as was found and because the previous ALJ had not used

11 a VE in so concluding.

12      The prior ALJ concluded that Plaintiff retained the RFC to

13 perform a full range of light work[5] avoiding repetitive cervical

14 movements and sitting in a forward position without a back

15 support and without reaching overhead or pushing or pulling more

16 than occasionally; she could perform her PRW of childcare worker,

17 which, pursuant to her report[6] concerning the position as

---

19      [5] Light work is defined by 20 C.F.R. § 404.1567(b) (DIS) and
20   20 C.F.R. § 416.967(b)(SSI) as follows:

21      Light work involves lifting no more than 20
        pounds at a time with frequent lifting or carrying
        of objects weighing up to 10 pounds. Even though
22      the weight lifted may be very little, a job is
        in this category when it requires a good deal of
23      walking or standing, or when it involves sitting
        most of the time with some pushing and pulling of
24      arm or leg controls. To be considered capable of
        performing a full or wide range of light work, you
        must have the ability to do substantially all of
25      these activities. If someone can do light work, we
        determine that he or she can also do sedentary
26      work, unless there are additional limiting factors
        such as loss of fine dexterity or inability to sit
27      for long periods of time.

        [6] The record upon which the prior decision was based is not before the Court in this proceeding.

performed, involved lifting less than ten pounds, standing for
most of the day but requiring only light exertion, and no
repetitive cervical movements, sitting in a forward position
without a back support, or reaching overhead or pushing or
pulling more than occasionally. (Tr. 57.)

The present ALJ concluded that Plaintiff could perform her
PRW and adopted the findings of the prior ALJ, reasoning that
there was no new and material evidence relative to any PRW. (Tr.
25.) The ALJ expressly concluded that Plaintiff could perform her
PRW of childcare worker as she performed it in the past, and the
ALJ stated that this was was confirmed by the VE who testified at
the present hearing. (Tr. 25.)

The VE at the present hearing had clearly reviewed
Plaintiff's report regarding her prior jobs (Tr. 101-02) because
he opined that Plaintiff's resume was not "too accurate" with
respect to identifying her previous jobs. (Tr. 40.) Further, he
was present throughout the hearing (Tr. 29) and thus had the
benefit of Plaintiff's testimony at the hearing regarding the
work she had done in the past, including being an instructional
aid in the morning for three years until June 1999 (Tr. 30-31),
ten months of day care before and after school working six or
seven hours in 1994 and 1995 (Tr. 31-32), and being a preschool
worker before that who had planned lessons and supervised
children, nap time, teacher's meetings, parent contacts, etc.,
(Tr. 32). The ALJ questioned Plaintiff about the positions of
daycare supervisor and preschool director that the VE had
mentioned as highly skilled jobs on her resume; Plaintiff did
those jobs for a month each, which involved some teaching and

27

1   some administrative paperwork. (Tr. 40-41.) Upon questioning by

2   the VE, Plaintiff testified that when she taught, she taught

3   shapes and colors, and she also read to the children for about

4   twenty minutes. (Tr. 41.)

5        The VE then began testifying without a clear question having

6   been propounded by the ALJ; the ALJ had said, "Just tell me."

7   (Tr. 41.) The VE then responded that he characterized her job as

8   nursery school attendant, DOT 359.677-018, light, SVP 4, no

9   transferable skills; and perhaps child monitor, 301.667-010,

10  medium, SVP 3. (Tr. 41-42.) Immediately after stating these

11  positions, the VE stated, "And I think that pretty much takes

12  care of what she did in actuality." (Tr. 42.) Given this express

13  statement, and further considering the context of the examination

14  of the VE, which related solely to the actual work that Plaintiff

15  had performed, the VE's testimony is reasonably understood as

16  referring to Plaintiff's positions not only as they appear in the

17  DOT[7] but also as actually performed by her.[8]

18       The VE testified that the difference between a nursery

19  school attendant and child care worker (the latter being the job

20  that the prior ALJ determined was PRW that Plaintiff could

21  perform [Tr. 57]) was that the latter provided services in the

22

23       [7]All references to the DOT are to the Dictionary of Occupational Titles,
    fourth edition revised in 1991.

24       [8]The position of nursery school attendant as reflected strictly in the
25  DOT and Selected Characteristics involves frequent stooping, reaching, and
    handling, and occasional kneeling and fingering. United States Dept. of Labor,
26  Selected Characteristics of Occupations Defined in the Revised Dictionary of
    Occupational Titles at p. 378 (1993). However, the VE testified that one with
27  a limit to occasional overhead reaching could still perform Plaintiff's PRW
    (Tr. 46). Further, he stated that the position involved constant bending and
    stooping (Tr. 48), whereas the Selected Characteristics reflected only
28  frequent (not constant) stooping. Thus, there are additional indicia that the
    VE was deviating from the DOT.

home and in an institutional setting, and the former only in an
institutional setting; however, there was no "child care worker"
title in the <u>Dictionary of Occupational Titles</u> (DOT), and the VE
did not know how the prior ALJ came up with that term. (Tr. 42-
43.) Plaintiff had done all of her work in an institutional
setting. (Tr. 42.)

The ALJ appeared to acknowledge that in light of Plaintiff's
age (62) and education (third year of college) (Tr. 44),
Plaintiff would be disabled if she had the RFC attributed to her
by the prior ALJ. (Tr. 45.) The present ALJ noted that the prior
ALJ had not had a VE; the present ALJ stated that he assumed that
Plaintiff's attorney did not appeal, but he then noted that there
had been an appeal concluding with the Appeals Council's denial
of review. The ALJ noted that the time between the instant filing
in April 2002 and the prior event was more than one year but less
than four. (Tr. 45-46.) No express statement or ruling was made
with respect to reopening.

The VE testified that Plaintiff could not perform her PRW of
nursery school attendant if she could perform a wide range of
light work, avoiding repetitive cervical movements and sitting in
a forward position without a back support, and only occasionally
performing overhead reaching, pushing, or pulling. (Tr. 44.) She
had no transferable skills to transfer to light or sedentary work
as a nursery school attendant. (Tr. 44.) The ALJ later
acknowledged that this RFC was the one found by the ALJ at the
prior hearing. (Tr. 45.) The VE responded to queries regarding

1  other RFC assessments also.[9]

2      The Court is mindful that the decision of the previous ALJ
3  is not under review, and further that Plaintiff faced a
4  continuing presumption of non-disability. The Court further notes
5  the Plaintiff's own report of her past work (Tr. 102) indicated
6  walking and standing five to seven hours; lifting less than ten
7  pounds; sitting one hour; no climbing; no information about
8  stooping, and dashes with respect to crouching, crawling, and
9  handling, grasping, or grabbing big objects; and one-half hour of
10  kneeling. However, no affirmative information is given with
11  respect to repetitive cervical movements, sitting in a forward
12  position without a back support, or frequency of reaching
13  overhead, pushing, or pulling.

14      It might be possible to isolate Plaintiff's own work report
15  as some support for the ALJ's decision. However, this Court's
16  task is to consider the evidence in light of the record as a

17  ────────────────

18      [9] The VE further testified that Plaintiff could perform her PRW if
    Plaintiff could lift twenty pounds occasionally and ten pounds frequently;
19  stand, bend, or walk about six; sit about six; and engage in only occasional
    overhead reaching. (Tr. 46.)
20      The VE testified that Plaintiff could not perform her PRW if she needed
    frequent breaks, could lift fifteen pounds frequently, twenty-five pounds
    occasionally, and had postural limitations of no frequent bending, stooping,
21  and crouching. (Tr. 46.)
        When questions arose as to the reason for the different results, the ALJ
22  posed or reposed a question concerning an RFC of standing and walking at least
    six hours, a need for frequent breaks, unrestricted sitting, lifting fifteen
23  pounds frequently and twenty-five pounds occasionally, with "[p]osterior
    limitations" (Tr. 47) and bending, stooping, and crouching to be performed
24  occasionally. The VE explained that frequent breaks and occasional "posterior"
    did not fit her PRW; further, frequent breaks were what sank that third RFC
25  hypothetical. (Tr. 48.) Further, the last two RFC's had occasional posterior
    limitations that did not fit the PRW because of constant bending and stooping.
    (Tr. 48.) Thus, Plaintiff could not perform her PRW if the RFC included the
26  limitations of frequent breaks or only occasional stooping and bending. (Tr.
    48.)
27      The VE testified that Plaintiff could perform her PRW if she had no
    transferable skills, could lift twenty pounds occasionally and ten pounds
28  frequently, could stand and/or walk about six hours, sit about six, with
    occasional postural limitations, and no frequent overhead reaching. (Tr. 46.)

1  whole, weighing both the evidence that supports and the evidence

2  that detracts from the Commissioner's conclusion; it may not

3  simply isolate a portion of evidence that supports the decision.

4  Further, reference to the ALJ's decision reveals that the ALJ

5  himself understood the VE to have confirmed that Plaintiff could

6  perform her PRW. (Tr. 25.) The ALJ expressly concluded that there

7  was no new and material evidence relative to any PRW as a

8  childcare worker as she performed it in the past. It thus appears

9  that the ALJ completely misapprehended or failed to consider the

10 VE's testimony that if Plaintiff had the RFC attributed to her by

11 the ALJ, she could not perform her PRW as performed. Contrary to

12 the ALJ's conclusion, the VE did not confirm the finding of the

13 previous ALJ; rather, the VE noted that there was no position in

14 the DOT reflecting the previous ALJ's assessment of Plaintiff's

15 PRW, and he instead appeared to characterize her work as actually

16 performed, concluding that with her RFC, she could not perform

17 it.

18     The ALJ appears to have failed to consider this new and

19 material evidence at step four. Further, given this omission from

20 the analysis, the ALJ did not determine whether there were

21 departures from the DOT and Selected Characteristics that were

22 supported by persuasive evidence. The ALJ will be given an

23 opportunity to consider the testimony of the VE regarding

24 Plaintiff's past relevant work, hold a new hearing and consider,

25 as appropriate, any further testimony from a VE and from

26 Plaintiff concerning Plaintiff's past relevant work, ability to

27 perform her past relevant work in light of the RFC already

28 established, and, if appropriate, ability to perform work that

1  exists in significant numbers in the economy.

2                          RECOMMENDATION

3      Based on the foregoing, the Court concludes that the ALJ's

4  decision was not supported by substantial evidence in the record

5  as a whole and was not based on proper legal standards.

6      Accordingly, it IS RECOMMENDED that

7      1. Plaintiff's social security complaint BE GRANTED, and

8      2. The matter BE REMANDED pursuant to sentence four of 42

9  U.S.C. § 405(g) for further consideration, consistent with this

10 decision, of Plaintiff's status as disabled, including whether or

11 not with the RFC found by the ALJ, Plaintiff could perform her

12 past relevant work, and, if appropriate, whether on the basis of

13 the Plaintiff's age, education, work experience, and residual

14 functional capacity, she could perform any other gainful and

15 substantial work within the economy; and

16     3. Judgment BE ENTERED for Plaintiff Arlene C. Johnson and

17 against Defendant Jo Anne B. Barnhart.

18     This report and recommendation is submitted to the United

19 States District Court Judge assigned to the case, pursuant to the

20 provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 72-304 of the

21 Local Rules of Practice for the United States District Court,

22 Eastern District of California. Within thirty (30) days after

23 being served with a copy, any party may file written objections

24 with the court and serve a copy on all parties. Such a document

25 should be captioned "Objections to Magistrate Judge's Findings

26 and Recommendations." Replies to the objections shall be served

27 and filed within ten (10) court days (plus three days if served

28 by mail) after service of the objections. The Court will then

1   review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636

2   (b)(1)(C). The parties are advised that failure to file

3   objections within the specified time may waive the right to

4   appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d

5   1153 (9th Cir. 1991).

6

7   IT IS SO ORDERED.

8   **Dated:    January 26, 2007**             /s/ **Sandra M. Snyder**
    icido3                                  UNITED STATES MAGISTRATE JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28